# Robinson *v.* The State.

### Removing or Destroying Boundary Marks.

(Decided April 10, 1913.  Rehearing denied May 8, 1913.
62 South. 303.)

1. *Boundaries; Removal; Criminal Offense.*—The removal of a boundary designating a corner or any other point of a boundary line was not a common law offense, but is made such by section 6393, Code 1907, and is complete, under said section where the removal of a landmark was intentionally done without lawful excuse or necessity, without regard to the motive; "willfully" meaning in that connection, intentional, without lawful excuse or necessity.

2. *Same.*—The removal by an owner of land of a post erected and used to designate a boundary line between him and the adjacent owner after the county surveyor had located the boundary line elsewhere, is within section 6393, Code 1907, although the county surveyor advised the removal to avoid confusion.

3. *Same.*—The object of section 6393 is to preserve landmarks as such when erected or used in good faith to designate a boundary, and it is immaterial whether the landmarks removed were correctly placed.

[Robinson v. The State.]

4. *Same.*—Where the evidence showed that the post was used to designate the corner of a tract of land, the fact that the affidavit alleged that the post was erected to designate the corner was immaterial under section 6393, on a trial for removing a post erected and used to designate a boundary line.

5. *Same.*—The provision of section 6393 make the offense of removing the boundary landmark punishable without reference to the ownership of the land.

6. *Witnesses; Knowledge; Boundary.*—Where a witness had lived on and owned land for four or five years and had stated that a post erected and used to designate a point of the boundary of his land had been there ever since he had lived on the land, he showed sufficient knowledge to testify with respect to the known use of the post as a boundary line.

7. *Property; Ownership; Owner.*—The words "owner" and "ownership" are often used to designate one who has dominion or control over a thing, the title to which is in another.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

D. P. Robinson was convicted of crime, and he appeals. Affirmed.

The facts sufficiently appear from the opinion. The following charges were refused to defendant: "If the defendant acted in good faith under the instructions of the county surveyor in removing the posts, then you should acquit him." C. "If you find from the evidence that defendant acted upon instructions of the witness Burleson and acted in good faith in the removal of the post, you should find defendant not guilty."

TIDWELL & SAMPLE, for appellant. Under the evidence in this case, it cannot be said that the defendant willfully removed or destroyed the post or that he had any criminal intent, but it rather shows that he was acting honestly on the instructions of the county surveyor, and he was therefore entitled to an acquittal.—14 Neb. 181; 14 S. W. 663; 44 S. E. 852; 35 Fed. 282; 93 N. C. 590; 89 Ind. 118; 34 L. R. A. 581; 40 Cyc. 945; *Harrison v. The State,* 37 Ala. 154; *Gordon v. The State,* 52 Ala. 208; *Dotson v. The State,* 62 Ala. 141.

On these authorities the defendant was entitled to the instructions requested by him.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Section 6393, Code 1907, was enacted for the particular purpose of preventing just such acts as is shown to have occurred on this occasion, and the record is without error.

PELHAM, J.—The appellant was prosecuted on an affidavit charging the elements of the offense prohibited by section 6393 of the Criminal Code, for removing or destroying a boundary mark, and was convicted and the minimum fine designated by the statute as a punishment ($50) was assessed by the jury. The court reduced this fine to $10 because, as stated in the judgment entry, the court was of the opinion "that the defendant is only technically guilty."

There was no criminal liability attached to the removal of a landmark at the common law (*State v. Burroughs* 7 N. J. Law. 426; *Young v. Miller,* 3 Hill [N. Y.] 21), and the offense prohibited, being entirely of statutory creation, necessarily depends upon a construction of the statute (section 6393). This statute is as follows: "Any person who willfully removes or destroys any monument or post, or cuts down, removes, or destroys any tree, or defaces, or alters the marks made on such monument, post, or tree, which monument, post, or tree was erected or used to designate the corner or any other point on the boundary of any lot or tract of land, must, on conviction, be fined not less than fifty, nor more than five hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than twelve months." This

[Robinson v. The State.]

law has been upon the statute books of the state for a great many years, but we do not find that any court of review has up to this time had occasion to construe or interpret its meaning as applied to any concrete case before it.

It was not the intention of the lawmakers by this statute to constitute every act, in removing or defacing the land markers specified, a criminal offense. The controlling word is "willfully," and the act of removal or defacement must be characterized by willful conduct, to make it a punishable crime under this statute. The evident purpose of the law is to preserve and keep intact and free from defacement private, as well as public, landmarks, by making it a punishable offense for any person to willfully remove, destroy, or deface them.

Much learning has been expended in an analysis of the meaning or signification of the word "willful" as employed in different connections, and in fact it may not always have the same meaning when employed in penal enactments (*Harrison v. State*, 37 Ala. 154) ; but, as used in the connection we find it here employed in this penal statute, we think it means no more than that the act shall be intentionally done without lawful excuse or necessity.

The statute making it a criminal offense to willfully disturb religious worship has been construed so as to make "willfully" as there employed synonymous with "intentionally" or "designedly," and it is held in this connection that where the act declared by the statute to be an ingredient of the offense is committed intentionally, and its natural tendency is to disturb the assemblage, the law presumes the guilty intent.—*Williams v. State*, 83 Ala. 68, 3 South. 743; *Salter v. State*, 99 Ala. 207, 13 South. 535.

A specific wrongful intent is not a necessary essential of many misdemeanors, yet we do not desire to be understood as holding by what we have said that the offense under this statute would be complete if it should only be shown that one charged with violating its provisions removed a landmark under circumstances where he was entirely innocent of all knowledge that it was a landmark and there was nothing in the existing and attending conditions to charge him with knowledge or notice of the fact. The intention, to characterize the act as willful, as used in this statute, must not only be to remove a certain object, but the intention must be to remove such an object as is prohibited, i. e., a landmark. If there is nothing to put the person on notice or cause him to think that the object he moves is a landmark, and he moves it in entire ignorance of its being used for this purpose, the statutory element of willfulness would be lacking, for there would be under such circumstances, no intentional removing of a landmark. In other words, the intention must be to do that which is inhibited by the statute, and when this prohibited act is shown to have been intentionally done without lawful excuse or necessity, the offense is complete without regard to the purpose or motive actuating or accompanying the act, for the law presumes the bad purpose or evil intent from the intentional commission of the act prohibited.

The facts, in respect to the commission of the offense, show that the defendant and one Bentley had owned and occupied adjoining lands for about three years, when the defendant employed the county surveyor to run the lines of his land, and according to this survey the boundary line between the lands of Bentley and the defendant was shown to be some 15 feet over on Bentley's land from where the line had previously been marked by a certain chestnut post, and the defendant,

acting under the instructions of the surveyor, removed this post by pulling it up out of the ground and throwing it down. There was evidence to the effect that this post had been used to designate the boundary line of the lands in question for 11 years or more, and was known as a "corner post." Bentley testified that it was a corner post and used to designate a boundary line, and it is not reasonable to assume that his adjoining neighbor, Robinson, the defendant, did not know this. Lex intendit vicinum vicini facta scire.—Co. Litt. 78b.

The reason given by the surveyor to the defendant for the removal of the post was that "it might cause confusion" by being allowed to remain where it was, and thereupon the defendant pulled it up and threw it aside. This of itself shows that it was recognized by the surveyor as a landmark and was removed by the defendant as being such landmark, at the surveyor's suggestion and for the evident purpose of destroying or removing the post as being a landmark, "to prevent confusion." Otherwise no "confusion" could follow from its being allowed to remain, if it was not recognized and treated as a landmark. The act of the defendant in removing the post, to be gathered from all the evidence, carries with it the plain inference that it was his intention thereby to do the very thing the statute prohibits; that is, remove a post erected or used to designate the corner or boundary line of a tract or lot of land.

The evidence afforded sufficient facts as a basis from which the jury could draw the inference that the post was erected or used to designate a corner or boundary line, and that the defendant, who had lived on the adjoining land two or three years, was cognizant of this use at the time he intentionally removed it without a lawful excuse; for it was no lawful excuse that the surveyor told the defendant to remove it, or that the post

was not, if in fact it was not, on the true line or corner.

The statute makes it an offense to remove or deface any post, monument, etc., erected or used to designate any corner or other point on the boundary line of any lot or tract of land, without regard to its being placed or erected on true lines. What is a true corner or correct boundary line is often a most seriously disputed question, of exceedingly difficult solution, and it is a matter not to be injected into the terms of the statute when its provisions do not include it.

The object and purpose of the statute being to preserve landmarks as such, when erected or used in good faith for that purpose, it can make no difference, so far as offending the provisions of the statute is concerned, that the landmarks were not correctly or truly placed. The offense under the terms of the statute consists in willfully removing, destroying, or defacing a post, monument, etc., erected or used for the purpose of designating the corner or boundary line, irrespective of its being placed on the true corner or line, so long as it was in good faith erected or used for the purpose of a landmark, and no question or dispute over the post or other object removed having been correctly or truly placed on a recognized or established corner or boundary line could properly enter into the question of guilt vel non of one prosecuted under this statute.

The fact that the defendant acted on the advice of the county surveyor in removing the post could not, as we have said, justify the act and render him guiltless. The county surveyor had no right or authority in the premises to delegate, being without right or authority himself to remove or destroy the landmark; and the court was not in error in instructing the jury, in its oral charge, to that effect.

For the same reason, the court properly refused to give the written instructions requested by the defendant set out in the bill of exceptions and marked "A" and "C."

The court was not in error in overruling the defendant's motion to exclude the evidence of the witness Bentley that "the post was known as a corner post and was used to designate a boundary line." It is the appellant's contention in this particular that, because the witness was shown by statements made by him on cross-examination to have no actual knowledge of who surveyed the land and erected the post, his statement as above set out, made on direct examination, should have been excluded. The witness had lived upon and owned the land for about four years, and testified that the post had been where it was when removed by the defendant ever since he had lived on the land, and this, in our opinion, shows sufficient knowledge by the witness to testify with respect to the known use of the post as a corner or boundary line mark.

The affidavit set out in the record differs in its averments from the affidavit shown by the bill of exceptions, in that the former states that the post was "erected or used to designate," etc., following the words of the statute, while it is alleged in the latter that the post was "erected to designate," etc., without the alternative averment "or used." This is not material, in any light in which it may be viewed, however, as referred to the evidence, and no objection by demurrer or otherwise is shown to have been taken to the affidavit. It was shown by the evidence of the state's witnesses that the post was used to designate the corner of Bentley's tract of land, and this afforded a sufficient inference from which the jury could find that the post was erected for the purpose for which it was used.

The affidavit or complaint on which the defendant was tried charges that the post in question was erected to designate the corner of a tract of land "owned" by the said Bentley, and the proof showed that Bentley had mortgaged the land to secure the purchase price of the land in question, and that the mortgage was past due and unpaid at the time of the trial. It is urged by appellant that the state failed in its proof in showing Bentley to be the owner of the land as alleged in the affidavit. The statute (Code, § 6393) makes the offense punishable without reference to the ownership of the land; and "the word 'owner' is not infrequently used to describe one who has dominion over a thing the title to which is in another.—*Johnson v. State,* 1 Ala. App. 148, 55 South. 268; 6 Words & Phrases, p. 5148."—*Lockhart v. State,* 6 Ala. App. 61, 60 South. 591, present term. The purposes and object of the statute are not to be so narrowly construed as to authorize the general charge for the defendant in a prosecution had under its provisions, by according such a limited meaning as contended for by the appellant to the word "owner" as used in the affidavit.

We find no error in the record, and the judgment appealed from is affirmed.

Affirmed.